**MERCEXCHANGE, L.L.C., Plaintiff,**

v.

**eBAY, INC. and Half.com, inc., Defendants.**

**No. CIV.A. 2:01CV736.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 6, 2003.

Thomas J. Cawley, Hunton & Williams, McLean, VA, Kenneth Reed Mayo, Gregory N. Stillman, Hunton & Williams, Norfolk, VA, Thomas Jefferson Scott, Jr., David Michael Young, Brian Mark Buroker, Emerson Vincent Briggs, III, Jennifer Ann Albert, Hunton & Williams, Scott L. Robertson, Hunton & Williams, Washington, DC, for Plaintiff.

Robert William McFarland, Steven R. Zahn, McGuire Woods LLP, Norfolk, MA, Allan Madis Soobert, Cooley Godward LLP, Reston, VA, Jeffrey Graham Randall, Charles Patrick Ebertin, Jeffrey Scott Karr, Michael Christopher Hendershot, Matthew James Brigham, Cooley Godward LLP, Palo Alto, CA, for Defendants.

### ORDER AND OPINION

FRIEDMAN, District Judge.

Currently before the court are ten post-trial motions in the above-styled case; seven filed by the plaintiff and three filed by the defendants. Each motion is addressed separately below.

## I. Background

On May 27, 2003, after a five-week jury trial, the jury returned a verdict finding the defendants liable for $35 million for willfully infringing the plaintiff's patents, U.S. Patent Nos. 6,085,176 ("the '176 pat-

ent") and 5,845,265 ("the '265 patent"). The court has previously discussed the nature and detail of the litigation and as such, will not reiterate it here. Following the reading of the jury's verdict, the defendants made a number of oral post-trial motions, which were to be followed up with written briefs. The plaintiff also indicated that it would be filing various post-trial motions. The court endorsed the schedule of briefing agreed to by the parties. Accordingly, on June 12, 2003, the defendants filed three motions, including (1) Half.com's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on the '176 Patent; (2) eBay and Half.com's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on the '265 Patent; and (3) eBay and Half.com's Renewed Motion to Strike Testimony of Plaintiff's Damages Experts, Motion for New Trial, or Motion for Judgment as a Matter of Law. Likewise on June 12, 2003, the plaintiff filed the following motions: (1) Motion for Entry of a Permanent Injunction Order; (2) Motion to Enforce Judge Friedman's Injunction Order of February 26, 2003, and for Order to Show why Defendant eBay, Inc. Should Not be Held in Contempt for Facilitating Violations of Judge Friedman's Injunction Order of February 26, 2003; (3) Renewed Motion for Judgment as a Matter of Law; (4) Motion for Prejudgment and Post-judgment Interest; (5) Motion for Post-Verdict and Postjudgment Accounting; (6) Motion for Enhanced Damages Under 34 U.S.C. § 284 and Attorney Fees Under 35 U.S.C. § 285; and (7) Motion for Entry of Final Judgment. Responses to these motions were filed on June 23, 2003 [1] and the rebuttals on June 30, 2003. As all the motions are now fully briefed, they are ripe for review.

## II. Discussion

### A. Defendants' Motions [2]

#### 1. Half.com's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on the '176 Patent.

▪ In this Motion, Half.com argues that it is entitled to judgment as a matter of law ("JMOL") on noninfringement and invalidity for obviousness, and seeks a conditional new trial. While this court could go into detail as to each and every argument made by Half.com in its JMOL, the court will not do so. Half.com reargues most, if not all, of the arguments made to the jury. These arguments, while clearly persuasive in the eyes of the defendants, did not convince the jury of their theory of the case. JMOL cannot be granted against a party unless "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue...." Fed.R.Civ.P. 50(a). Thus, JMOL should not be granted unless

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only be the result of sheer surmise and conjecture or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded men could not arrive at a verdict against him.

*Jamesbury Corp. v. Litton Indus. Prods. Inc.*, 756 F.2d 1556, 1558 (Fed.Cir.1985). When ruling on a motion for JMOL, a judge "must consider all the evidence in a

---

1. The due date for the responses was actually June 22, 2003; however, because this fell on a Sunday, the parties had until the following Monday to file their response briefs.

2. The court notes that the defendants' Motions are written as if they are appellate briefs. In fact, nowhere in any of the Motions or accompanying Memoranda do the defendants cite the standard for judgment as a matter of law following a jury verdict.

light most favorable to the non-mover, must draw reasonable inferences favorable to the non-mover, must not determine credibility of witnesses, and must not substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir.1984) (internal citations omitted). Given this standard, the court must deny Half.com's Motion.

### a. Noninfringement

First, with respect to noninfringement, the plaintiff was required to prove by a preponderance of the evidence that the defendants' systems practiced each and every claim limitation. In order to facilitate this, the plaintiff used claim charts which its expert witnesses discussed during direct examination. While the defendants put on their own experts to contradict the testimony of the plaintiff's experts, the jury was entitled to judge the credibility of these witnesses for themselves. The fact that the defendants disagree with the plaintiff's experts' conclusions is not a basis for JMOL or a new trial. Half.com makes five main arguments as to why JMOL is required for noninfringement, including (1) that no reasonable jury could have found the '176 electronic market/trusted network limitations; (2) no reasonable jury could conclude that Half.com searches a plurality of electronic markets for an item; (3) AlBooks, TextBooksX, and Buy.com are not electronic markets or trusted networks; (4) Half.com uses a noninfringing centralized database technique with FTP files; and (5) no reasonable jury could find willfulness.

■ With respect to the first argument, Half.com essentially reargues this court's *Markman* ruling. Specifically, Half.com contends that it is not a trusted network but rather a person-to-person system and the court erred in not providing the jurors with the entire *Markman* Opinion. The defendants have argued this person-to-person versus trusted network issue repeatedly over the course of this litigation. At no point during the two-day *Markman* hearing did either side ask the court to define person-to-person system.[3] When the court ruled that the plaintiff's patents envisioned a trusted system and not a person-to-person system, it was not saying that eBay or Half.com was either a trusted system or a person-to-person system. These were simply terms used by the parties throughout the hearing. Moreover, when the plaintiff raised the issue in a Motion to Reconsider its Motion to Reconsider, the defendants balked and filed a sur-reply to respond to the plaintiff's attempt to reargue *Markman*. At trial, the defendants argued that it was not a trusted system, but instead, a person-to-person system. In opposition, the plaintiff offered evidence of the various trust-enhancements that eBay and Half.com incorporated into their systems. The jury clearly found that the defendants operated trusted systems and infringed the patents. The court will not now find as a matter of law that Half.com is a person-to-person and not a trusted system.

As for the next two arguments, Half.com argues that the JMOL is required because it does not search a plurality of electronic markets for a particular item, as these terms were defined by this court. Half.com maintains that in order to be an electronic market, a participant must be able to buy, sell, search, and browse for goods

---

**3.** It was the defendants who, during the *Markman* hearing and in their supporting briefs, asked this court to find that the terms auction, electronic market, and market for goods must exist on a trusted network or system or with a trusted intermediary. The plaintiff simply asked this court to give these terms their ordinary meaning.

online. Half.com argues that because there was insufficient evidence that sites such as Buy.com and AlBooks allow participants to sell online, they cannot be electronic markets. However, Half.com is mistaken. This court's *Markman* Opinion stated that "electronic market is construed as a trusted network or system where participants can buy, sell, search *or* browse goods online." *Markman* Opin., Dkt. 207 (Oct. 18, 2002), p. 30 (emphasis added). There was nothing in this claim construction that required the electronic market to do all four functions cited. Likewise, Half.com argues that it does not search for a unique or particular item and thus, cannot infringe. However, as the court ruled in its *Markman* Opinion, "an item is a good." *Id.* at p. 31. The court did not define an item as a unique or particular good. The court will not now overturn a valid jury verdict based on these arguments over the *Markman* construction.

Next, Half.com reargues its position that it does not infringe the patent because it uses a centralized database technique with FTP files. The defendants strenuously argued this point at trial, and even created a somewhat lengthy animation clip of what the Half.com system does to populate its database. The defendants' expert, Dr. Maly, walked the jury through this animation in great detail. However, it was the jury's right to accept this evidence or not. Clearly it did not. Instead, the jury relied on the deposition testimony of Mr. Balijepalli, as well as the expert testimony of Dr. Frieder. The fact that "there may have been trial evidence favorable to both sides . . . is simply irrelevant." *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 621 (Fed.Cir.1985). This does not provide a proper basis for the court to enter JMOL in favor of Half.com.

■ The final point raised by Half.com, which is equally applicable to the defendants' JMOL for the '265 patent, *see infra,* is Half.com's insistence that the jury erred in finding it willfully infringed the '176 patent. The plaintiff contends that because the defendants knew of its patents since at least June of 2000, and failed to obtain an opinion of counsel or conduct a patent clearing investigation, they cannot argue a good-faith belief that the patent was invalid or not infringed. The defendants, on the other hand, state that the Federal Circuit has held that the failure to obtain an opinion of counsel does not mandate a finding of willfulness. *See, e.g., Read Corp. v. Portec, Inc.,* 970 F.2d 816, 828–29 (Fed.Cir.1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed.Cir.1995); *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1579 (Fed.Cir.1986). Moreover, the defendants argue that they were not aware that the plaintiff believed they were infringing the patents at issue based on statements made by the inventor. However, the defendants made similar arguments to the jury, who apparently did not find that they outweighed the plaintiff's evidence on willfulness. There is no dispute that the defendants failed to obtain an opinion of counsel and conduct a patent clearance investigation. Furthermore, the defendants repeatedly argued at trial that they could have designed around these patents for less than $15,000. The fact that this simple, inexpensive process would have saved the time, expense, and necessity for this litigation and yet was not done by the defendants, also weighs against them. The fact that the court ruled that the sufficiency of the evidence of willfulness was "a close call" in the defendants' first Rule 50 motion is of no consequence here. In that ruling, the court stated that "based on the defendants' notice of the patents and their duty to avoid infringement, the lack of a patent clearing policy, and the lack of a written opinion of counsel, there is sufficient evidence to allow a

jury to determine willfulness." The jury apparently found the plaintiff's evidence on willfulness clear and convincing.[4] Therefore, this argument by Half.com must be denied.

### b. Invalidity

Second, Half.com cites three main reasons why its Motion for JMOL should be granted with respect to invalidity of the '176 patent claims. These include (1) the plaintiff blocked the date of invention instructions; (2) the plaintiff misstated the motivation to modify standard; and (3) the evidence presented with respect to obviousness was clear and convincing.

■ With respect to the date of invention, the court has to admit its surprise at this argument, given the relative lack of objection to the jury instruction on this issue. The court told the attorneys that it would modify the Federal Circuit Bar Association Model Patent Jury Instructions for use in this case.[5] A few days prior to the charging conference, the court gave the attorneys copies of the final set of jury instructions. At the charging conference, the parties were able to raise any objections to this set of instructions. The defendants did not state that the court erroneously omitted the date of invention paragraph from the model instructions at this time or any time prior to this Motion. Rather, the defendants offered another in-

struction on corroboration of the date of invention, which this court found was not adequately supported by the caselaw cited. Moreover, there were numerous instances in the jury instructions relating to prior art where the date of invention is discussed with the jury. There is no indication that the jury rejected the defendants' invalidity defense based on the date of the invention, as neither side asked for this question to be offered on the verdict form. In fact, the defendants' objected to the plaintiff's proposed verdict form where they sought a list of the prior art references that the jury considered for each invalidity allegation. The court agreed with the defendants and removed these questions from the verdict form. The defendants now appear to be seeking· to benefit from the court's ruling in their favor on this issue. The fact that the jury did not receive an instruction on the corroboration of the date of invention does not, in and of itself, require that JMOL be granted. Therefore, this argument does not mandate JMOL for Half.com.

■ As to the second ground for JMOL of obviousness, Half.com argues that the plaintiff mischaracterized the motivation to modify standard and misled the jury to believe that (1) the nature of the problem to be solved could not provide the motivation to modify, and (2) the prior art inventor must himself recognize the motive to

4. Furthermore, the defendants argue in their response to the plaintiff's Motion for Enhanced Damages, *see infra*, that because the jury found the defendants' indirect infringement of the '176 patent willful, despite not finding the defendants to have indirectly infringed this patent, warrants judgment as a matter of law for the defendants on all willful determinations. The defendants maintain that the jurors were confused as to the law on willfulness and as such, their verdict on willfulness cannot be upheld. This court disagrees. The jury was confronted with a lengthy and complex 22–page verdict form, consisting of 26 questions (with 222 sub-ques-

tions). The fact that an inconsistency arose in this manner does not mean that the jurors did not understand the law as this court instructed. While the court finds that there is no willfulness on the indirect infringement of the '176 patent claims, the court will not make such a finding on the remainder of the claims.

5. The court notes that it relied primarily on the Federal Circuit Bar Association Model Patent Jury Instructions, which did not contain an instruction on corroboration of the date of invention.

modify. Half.com relies on *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.,* 225 F.3d 1349, 1358 (Fed.Cir.2000). Specifically, Half.com contends that the following statement given by the plaintiff "urged the jury to commit plain error:"

> What does it mean for one skilled in the art to say that they're motivated to combine two or more, in some cases, in this case four different prior art references to render a claim invalid? It simply means this: That someone skilled in the art would be looking to solve a problem that is not solved by the current invention. You saw Mr. Nahan talk about his invention. As I saw that video, I didn't see that he thought there was any problem remaining to be solved. He thought that he had solved the problem that he was trying to solve. He liked the idea that sellers could back out of a transaction, that there was no finality. He liked the idea that you had to go offline to consummate that transaction. . . . Here you had an invention that was essentially designed to do exactly what it was designed to do. And so there's no motivation there.

Dkt. 556, p. 19 (quoting Trial Transcript 3607:21–3608–16). In *SIBIA,* the Federal Circuit rejected the patentee's argument that the prior art inventors were thinking about an entirely different application and that the motivation to combine was not on the minds of the prior art inventors. 225 F.3d at 1358. However, the plaintiff's statement was made during closing arguments, which the court instructed were not evidence. The court provided the jury with an instruction on motivation. *See* Jury Instruction No. 54 ("In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a person of ordinary skill in the field of the invention to make the combination covered by the patent claims. For each claim, you should also

consider whether or not any of the prior art items "teach away" from the invention covered by the patent claim. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?"). The court must assume that the jury follows the instructions they are given. Half.com has no evidence that the jury failed to consider this instruction but instead relied on comments made by the plaintiff during closing arguments. As such, there is no grounds for a JMOL or a new trial.

■ Finally, Half.com posits that the evidence of invalidity was clear and convincing. However, the jury did not agree. The jury heard evidence from all the expert witnesses in this case and was given volumes of documents to review during their deliberations. They clearly did not find the defendants proved invalidity by clear and convincing evidence. When the evidence on invalidity is viewed in the light most favorable to the plaintiff, the court cannot find that there was a complete absence of evidence supporting the verdict that the jury's findings could only be the result of sheer surmise and conjecture, or that there was such an overwhelming amount of evidence in favor of Half.com that reasonable and fair-minded jurors could not arrive at a verdict against it. Therefore, Half.com's Motion for JMOL and/or a New Trial on invalidity is denied.

### 2. eBay and Half.com's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on the '265 Patent.

In the defendants' second Motion, they again argue that JMOL is required of noninfringement and invalidity of the '265 patent, and that a new trial is compelled based on inadmissible evidence and misleading arguments presented to the jury by the plaintiff. Using the standard set

forth above, the court will address some of the issues raised by the defendants.

### a. Noninfringement

■ Similar to above, the defendants rely on a number of general reasons why JMOL is necessitated for noninfringement of the '265 patent. First, the defendants argue that the plaintiff blocked the jury from full consideration of the *Markman* Opinion. As discussed above, the jury was provided with the claims constructions as determined by this court. The jury was not given, over objection by the defendants, the analysis of the court in arriving at those claims constructions. The defendants somehow believe that the court ruled they were person-to-person systems. The court did no such thing. In fact, when the defendants filed their post-*Markman* motions for summary judgment, the court denied the one pertaining to the '265 patent because it held that one of the key issues that remained in dispute was "whether eBay is a trusted network." Order and Opinion, Feb. 14, 2003, p. 5. For the defendants to now argue that they were surprised or unprepared for trial on this issue is somewhat disingenuous. The court never explicitly defined what a trusted system must have versus what a person-to-person system encompasses. The plaintiff offered a great amount of evidence to prove to the jury that the defendants are indeed trusted networks, including escrow services, conflict resolution services, insurance, payment intermediaries, authentication services, feedback forum, and the policing of the system. This evidence was certainly sufficient to meet the plaintiff's burden by a preponderance of the evidence. Therefore, the defendants' argument on this ground must fail.

The defendants also argue that the court failed in providing the jury with the specific provision of the UCC on the legal issue of transfer of ownership. This issue was sprung on Dr. Weaver during cross-examination and was never presented to the court before trial as a triable issue. Never in the *Markman* Opinion, or any other opinion issued by this court in this case, did the court hold that transfer of ownership implicated the UCC. It was not an error requiring JMOL for the court to have refused this jury instruction. The defendants make a number of other arguments regarding whether or not their systems perform the functions of the '265 patent, including notifying the owner and authorizing the posting terminal. However, these same arguments were made to the jury. The plaintiff offered counter evidence to dispute the defendants' contentions, such as the fact that the defendants place "hashed cookies" on the user's terminal. The fact that the jury did not agree with the defendants' evidence does not necessitate a JMOL. This court cannot say, as a matter of law, that no reasonable jury could have ruled against the defendants. As such, the defendants' motion for JMOL on Noninfringement is denied.[6]

### b. Invalidity

■ The defendants again argue that JMOL is required because the court failed to give a date of invention instruction to the jury. As the court addressed this issue with respect to the invalidity argument for the '176 patent, *see supra* section II.A.1.b, the court will not reiterate it here. In addition to the arguments made above, the court notes that the plaintiff did indeed attack the merits of the defendants' prior art references and the failure of the defen-

---

**6.** The defendants also argue that JMOL of willfulness is required. The court addressed this issue when it was raised in the '176 motion and will not repeat that reasoning here.

dants' witnesses to show how the prior art invalidated each of the claims of the '265 patent, despite the fact that the defendants argue otherwise. The defendants had the burden to prove invalidity by clear and convincing evidence. The court believes that the jury was entirely reasonable in finding that the defendants did not meet their burden, with or without the date of invention instruction. Therefore, the court denies the defendants' JMOL on invalidity.[7]

#### c. New Trial

The defendants recite a laundry list of 17 reasons why this court should grant them a new trial. *See* Dkt. 557, pp. 2–3. There was little, if any, argument on the majority of these reasons in the defendants' supporting memorandum, and the plaintiff responded with just as little argument in opposition. Therefore, the court will not spend considerable time addressing them. After full consideration of the reasons, despite the essentially non-existent supporting argument, the court denies the defendants' request.

#### 3. eBay and Half.com's Renewed Motion to Strike Testimony of Plaintiff's Damages Experts, Motion for New Trial, or Motion for Judgment as a Matter of Law.

In their final motion, the defendants renew the motion made during trial to strike the testimony of Messrs. Troxel and Evans as it does not meet the standard set forth in Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In addition, based on a number of other errors and inconsistencies with respect to the jury's damages award, the defendants argue that the court should order a new trial on damages. The court will address each of the grounds of this Motion in turn.

#### a. Expert Testimony

The defendants argue that these experts used gross merchandise sales ("GMS") as the royalty base in computing the reasonable royalty due to the plaintiff for the defendants' infringement of the patents at issue. Specifically, the defendants contend that the court should strike the testimony and grant either a new trial or judgment as a matter of law because Mr. Evans and Mr. Troxel admitted that they (1) had never used GMS as a royalty base before; (2) had never seen GMS used as a base before; (3) conducted no studies to determine the reliability of GMS; (4) were not aware of any studies testing GMS reliability; and (5) did not know whether $2 billion worth of goods listed on eBay and assumed sold were included in GMS. The plaintiff counters, arguing that the experts properly applied the *Georgia–Pacific* factors to compute the reasonable royalty and the defendants are merely attacking the experts' factual conclusions rather than their methodology. *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y.1970), *modified and affirmed*, 446 F.2d 295 (2d Cir.1971).

Rule 702 provides that expert testimony is admissible only if "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has

---

**7.** The defendants also argue that the plaintiff misstated the law on the defendants' section 112 defense which likely caused the jury to disregard Dr. Crocker's testimony because he had never looked at the '265 patent claims. However, this is pure speculation, as the jury deliberated for three days on the numerous issues put to them in the special verdict form. It is very possible that the jury simply didn't find Dr. Crocker credible, or felt that his testimony didn't help the defendants meet their burden by clear and convincing evidence. Therefore, JMOL on this ground is similarly denied.

applied principles and methodology reliably to the facts of the case." Fed.R.Evid. 702; *see also Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. In *Daubert*, the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. *Daubert* set forth a non-exclusive checklist for courts to use in assessing the reliability of expert testimony, including:

(1) whether the expert's technique or theory can be or has been tested— that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

(2) whether the technique or theory has been subject to peer review and publication;

(3) the known or potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards and controls; and

(5) whether the technique or theory has been generally accepted in the scientific community.

509 U.S. at 592–95, 113 S.Ct. 2786. The Court later emphasized that the *Daubert* inquiry is "a flexible one" and that the analysis will depend on the nature of the issue, the witness's expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Court also explained that the principles of *Daubert* apply not only to scientific testimony, but to all expert testimony. *Id.* at 149, 119 S.Ct. 1167. Rule 702 was amended in 2000 to comport with the principles set forth in *Daubert* and *Kumho Tire*.[8]

As the court stated during trial when this issue arose, the first prong of Rule 702 requires that the testimony is based upon sufficient facts or data. In this case, Mr. Evans[9] stated that he chose GMS as a royalty base because, based on his expertise in the area of patent licensing, it was the most reliable figure, it was used in eBay's own financial reports, it was used in other MercExchange license agreements,[10] and, in his opinion, it was more reliable in

8. The Advisory Committee Notes to Rule 702 list some other factors courts have considered relevant in determining whether the expert testimony is sufficiently reliable. These include:

(1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.

(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

(3) Whether the expert has adequately accounted for obvious alternative explanations. *See Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994).

(4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

9. It was Mr. Evans who determined that GMS was an appropriate royalty base in this case. Mr. Troxel simply applied that to the defendants' specific financial information. Therefore, the court will focus on Mr. Evans' testimony with respect to this Motion.

10. While it is true that GMS was not used in the plaintiff's other licensing agreements, as was discovered during the cross-examination of Mr. Evans and Mr. Troxel, the jury was able to consider the other factors given by Mr. Evans as to why he used GMS. They were entitled to give whatever weight they thought appropriate to this decision.

the e-commerce field. His reasons for using this basis, as well as his reasons for not using another basis such as revenue, were challenged on cross-examination by the defendants. *See Daubert,* 509 U.S. at 595, 113 S.Ct. 2786 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Thus, his decision to use GMS was able to be challenged by the defendants. What remained was whether the jurors found his reasons for using GMS credible.

■ The second prong of Rule 702 requires that the testimony is the product of reliable principles and methods. The Federal Circuit has repeatedly "endorsed the conceptual framework of a hypothetical negotiation between patentee and infringer as a means for determining a reasonable royalty." *Micro Chemical, Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1393 (Fed.Cir. 2003)[11] (quoting *Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1384 (Fed.Cir.2001)). While the defendants disagree that during such a hypothetical negotiation they would have agreed to any royalty based on GMS as opposed to revenue, this was a question of fact for the jury to decide. As the Advisory Committee notes, *Daubert* was "not intended to serve as a replacement for the adversary system." Finally, the third

prong of 702 requires that the witness has applied principles and methodology reliably to the facts of the case. As stated above, Mr. Evans chose GMS based on the analysis of the defendants' financial reports. It was his opinion that in this case, GMS was a more reliable and accurate number than revenue, especially since eBay itself uses GMS to calculate its commission for the sale of the items. While it may be true that the experts were unsure whether GMS included failed transactions, the defendants were given a full opportunity to cross-examine them on this issue. The jury clearly chose to believe that the experts were reasonable in choosing GMS.

■ Furthermore, Mr. Evans has negotiated numerous license agreements and has testified as an expert in many other disputes where a reasonable royalty is utilized. As stated in the Advisory Committee Notes, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Thus, while Mr. Evans' experience in and of itself is insufficient to form a reliable opinion, his experience along with his explanations as to how he applied his experience to the facts of this case is sufficient to meet the *Daubert* test. For example, while Mr. Evans him-

---

11. In *Micro Chemical,* the Federal Circuit was asked to decide whether the testimony of a damages expert should have been excluded based on the use of an unreliable method to obtain a reasonable royalty. 317 F.3d at 1393. In affirming the district court's decision to allow the expert to testify, the Federal Circuit stated that the expert had "properly applied the accepted *Georgia–Pacific* methodology to [the plaintiff's] version of the disputed facts, explaining the effect each factor would have on a negotiated royalty." *Id.* While the defendants continued to argue that the court should not have permitted the ex-

pert to consider sales of the defendants' other products in arriving at a reasonable royalty, the court held that because the expert properly utilized the *Georgia–Pacific* test in arriving at his opinions, his analysis as to the reasonable royalty was a "factual issue" and "not grounds for excluding his testimony under Rule 702." *Id.* Likewise here, Mr. Evans explained why he chose to use GMS rather than revenue as a royalty base in arriving at his reasonable royalty. While the defendants may disagree with his theory of damages, it was a factual issue for the jury to decide.

self may never have used GMS in calculating a reasonable royalty, his reasons for choosing GMS in this case appear to meet the threshold level required under *Daubert.* The defendants' argument that GMS is not a common royalty base is not sufficient to exclude the testimony under *Daubert.* *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1318 (9th Cir.1995) (scientific experts might be permitted to testify if they could show that the methods they used were also employed by "a recognized minority of scientists in their field."). In addition, whether or not Mr. Evans or Mr. Troxel performed studies or surveys to determine whether the use of GMS was appropriate in this case is insufficient to exclude the testimony.

Therefore, because the defendants were able to cross-examine Mr. Evans and Mr. Troxel on their methods and principles in arriving at their opinions, what remained was a question of fact for the jury to decide. The defendants offered the testimony of Mr. Weinstein to counter the plaintiff's experts. Mr. Weinstein offered four alternative amounts for damages, including (1) $14,500, which reflects the design-around cost;[12] (2) $50,000, which reflects the valuation of the plaintiff-company for tax purposes; (3) $2.5 million, which amounts to the valuation of the plaintiff-company in a stock exchange with Aden Enterprises; and (4) $2.4 million, which utilizes the royalty rate determined by Mr. Evans and applies it to the defendants' revenue as opposed to GMS. The jury was entitled to weigh the experts' credibility and determine whether the use of GMS was appropriate in this case. This does not represent testimony that was so unreliable as to warrant its exclusion by the court. Therefore, the defendants' Renewed Motion to Strike the Testimony is denied.

### b. Resubmission of Verdict Form to Jury

██ When the jury initially came back with a verdict, the court reviewed it and noted an inconsistency. Specifically, the jury found no indirect infringement of the '176 patent by either defendant, and yet, awarded a total of $5 million in damages for this infringement. The court informed the jury of this inconsistency in general terms, referring only to the page numbers relating to the inconsistency. The parties did not object to this at the time. Shortly thereafter, the jury sent a note to the court, asking if they could adjust the other damages figures after curing the inconsistency. The court permitted them to do this. Again, there were no objections from either party at this time. When the jury finally returned with the verdict, they had increased the damages for the direct infringement of the '265 patent by $5 million. The defendants now argue that the court erred by resubmitting the verdict form to the jury to be amended. The defendants rely on the Fourth Circuit case of *McCollum v. Stahl,* 579 F.2d 869 (4th Cir.1978).

In *McCollum,* the plaintiffs sued the defendant for alleged violations of their constitutional rights pursuant to 42 U.S.C. § 1983. *Id.* at 869. When the jury returned their verdict, they found that the defendant was not liable for his actions; however, they awarded punitive damages

---

12. Mr. Weinstein testified that eBay could design around the claims of the '265 patent in 200 hours, and that Half.com could design around the claims of the '265 patent in 100 hours and the claims of the '176 patent in 100 hours. Tr. 2525:12–14. When multiplied by the cost per hour that would have been incurred, Mr. Weinstein arrived at a total of $14,500 for the defendants to completely design around the claims of the two patents at issue. Tr. 2525:15–19.

for his malicious conduct. *Id.* at 870. Noting the inconsistency, the court resubmitted the verdict to the jury with the instructions that if they answered no to the liability question, they were not to answer any further questions. *Id.* Upon returning, the jurors found the defendant liable for his actions and awarded damages. *Id.* at 871. On appeal, the Fourth Circuit held that because the special verdict was prepared pursuant to Federal Rule of Civil Procedure 49(a), "the resubmission was procedurally impermissible." *Id.* The court held that "the remand of the questions to the jury was tantamount, in its effect, to a direction to the jury to find liability in order to warrant the award of damages." *Id.*

However, this case can be distinguished from *McCollum.* First, when the court resubmitted the verdict form to the jury, the court did not further instruct the jury as to how to complete the form. Rather, the court merely noted the pages that the errors were on and told the jurors to read the instructions therein carefully. Other courts have noted their approval of resubmitting a verdict form to the jury where errors were made despite explicit instructions on the form. *See, e.g., Duk v. MGM Grand Hotel, Inc.,* 320 F.3d 1052, 1057 (9th Cir.2003). Second, the jury did not change their finding on liability in order to award damages. This circuit has distinguished *McCollum* in instances where "[r]esubmission did not direct the jury to find liability." *Taylor v. Home Ins. Co.,* 777 F.2d 849, 858 (4th Cir.1985); *see also Hafner v. Brown,* 983 F.2d 570, 575 (4th Cir.1992) ("If the district judge concludes that an inconsistent verdict reflects jury confusion or uncertainty, he or she has the duty to clarify the law governing the case and resubmit the verdict for a jury decision."). Therefore, this court finds that the resubmission of the verdict to clarify an inconsistent verdict was not erroneous.

The defendants' Motion for a New Trial on this ground is denied.

### c. Damage Award in Excess of Reasonable Royalty

 The defendants also argue that because damages awarded were greater than that found to be reasonable by these experts, that the damages are not supported by substantial evidence. For example, the defendants note that the plaintiff asked for $3,960,518 for Half. com's direct infringement of the '265 patent, relying on the experts' opinions as to a reasonable royalty. However, the jury awarded the plaintiff $14.5 million in damages for Half.com's direct infringement of the '265 patent. The defendants point out that this is 3.5 times the amount that the plaintiff's experts said was appropriate and reasonable. In total, the defendants maintain that the jury verdict represents damages that are $15,824,834 over the amount the plaintiff's experts found reasonable.

 Once patent infringement is found, a jury may award a patentee "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The Federal Circuit has held that "[t]he objective of the reasonable royalty calculation is to determine the amount necessary to adequately compensate for an infringement." *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1109 (Fed.Cir.1996). In other words, the reasonable royalty represents the floor to damages, not the ceiling. "A reasonable royalty calculation envisions and ascertains the results of a hypothetical negotiation between the patentee and the infringer at the time before the infringing activity began." *Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860, 869 (Fed.Cir.2003) (citing *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1311

(Fed.Cir.2002)). "This 'hypothetical negotiation' is often referred to as a willing licensor and licensee negotiation. However,... this is an 'absurd' characterization of the determination when the parties were previously unable to come to an agreement, i.e., were not 'willing'...." *Maxwell,* 86 F.3d at 1109 (citing *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed.Cir.1995)). As a result of this reality,

> the fact finder may consider additional factors to assist in the determination of adequate compensation for the infringement. These factors include royalties received by the patentee for the licensing of the patent in suit, opinion testimony of qualified experts, the patentee's relationship with the infringer, and other factors that might warrant higher damages. The fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty, is also relevant.

*Id.* at 1109–1110 (citing *Georgia–Pacific,* 318 F.Supp. at 1120).

Based on this, the court finds that the jury was entitled to calculate an amount they believed compensated the plaintiff for the defendants' infringement. That this amount is greater than the plaintiff asked for is of no consequence. The jury was entitled to consider these other factors in determining what amount of damages would compensate the plaintiff. *See Maxwell,* 86 F.3d at 1110 (finding that the jury was entitled to award additional damages to adequately compensate the plaintiff). As such, the defendants' Motion for a New Trial on this ground is denied.

#### d. ReturnBuy Issues: Double Counting and Post–License Damages

■ Finally, the defendants argue that the damages awarded based on eBay's inducement of ReturnBuy's infringement are improper for two reasons. First, the defendants contend that because ReturnBuy is a "power seller" on eBay, all of their GMS are included in eBay's GMS calculation and thus, awarding separate damages amounts to double counting. The plaintiff argues that the separate damages awarded based on eBay's inducement of ReturnBuy are appropriate because ReturnBuy (1) expected a commission of between 20% and 50% of their fixed-price GMS, and (2) was a power seller with direct access to eBay's web site which allowed it to post goods for sale in bulk on eBay. However, these arguments would only prevail if revenue were used as the royalty base because ReturnBuy would have had a separate revenue figure. As stated above, GMS was used and as such, the plaintiff cannot now receive damages on the same act of infringement. ReturnBuy lists goods on eBay and therefore, those goods are incorporated into eBay's GMS. To allow Mr. Troxel to then compute what ReturnBuy's GMS may have been (as no actual number was available) and assess more damages on that GMS is improper. Therefore, the damages awarded to the plaintiff for eBay's inducement of ReturnBuy to infringe the '265 patent, $5.5 million, will be stricken from the jury's damage award.

■ The defendants also argue that because ReturnBuy entered into a license agreement with the plaintiff in December of 2002, yet Mr. Troxel included damages up to March of 2003, the plaintiff should not be entitled to those additional three months of damages. However, as the plaintiff pointed out, neither party asked the court for a special verdict form broken down by months of infringement. As such, the defendants have waived this argument.

### B. Plaintiff's Motions

#### 1. Motion for Entry of a Permanent Injunction Order.

■ In the plaintiff's first motion, it seeks a permanent injunction order to pre-

vent the defendants from further infringing on its patents. The plaintiff has prepared a Proposed Permanent Injunction Order ("Proposed Order"), which it has supplied to the court. The defendants object to the grant of a permanent injunction order in general, and raise specific objections to the plaintiff's Proposed Order as being vague and overly broad. The defendants also note that if the court grants an injunction, they reserve the right to move to stay such an injunction pending appeal.

■ Once infringement and validity of the patents have been established, a district court is authorized to grant a permanent injunction against the infringer. 35 U.S.C. § 283. In fact, the grant of injunctive relief against the infringer is considered the norm; however, the decision to grant or deny injunctive relief remains within the discretion of the trial judge. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed.Cir.1988); *see also Odetics, Inc. v. Storage Tech. Corp.*, 14 F.Supp.2d 785, 788 (E.D.Va. 1998), *aff'd*, 185 F.3d 1259 (Fed.Cir.1999) ("The issuance of an injunction following a verdict of infringement is not automatic; however, district courts must instead follow the traditional equitable principles that guide the decision whether to enjoin certain conduct."). The Federal Circuit has indicated that "an injunction should issue once infringement has been established unless there is a sufficient reason for denying it." *W.L. Gore*, 842 F.2d at 1281. The rationale behind this stems from the concept of the property rights of patent holders. "It is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property. The right to exclude recognized in a patent is but the essence of the concept of property." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1246–47 (Fed.Cir.1989). "Issuance of injunctive relief against [the defendants] is governed by traditional equitable princi-

ples, which require consideration of (i) whether the plaintiff would face irreparable injury if the injunction did not issue, (ii) whether the plaintiff has an adequate remedy at law, (iii) whether granting the injunction is in the public interest, and (iv) whether the balance of the hardships tips in the plaintiff's favor." *Odetics*, 14 F.Supp.2d at 794 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)).

### a. Irreparable Harm

The plaintiff argues that it will suffer irreparable harm if an injunction does not issue as the defendants will continue to infringe on its property rights. Courts have held that when, as here, "validity and continuing infringement have been clearly established ... immediate irreparable harm is presumed." *Odetics*, 14 F.Supp.2d at 794 (quoting *Smith Int'l Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed.Cir. 1983)). Notwithstanding the presumption of irreparable harm, the plaintiff notes a number of specific ways in which it will be harmed if the defendants are not enjoined from their infringing conduct. These include being "deprived of its ability to either pursue the development of its inventions under the protection of its patent rights, or to have the exclusive right to license its patented technology to others on the most beneficial terms available." Dkt. 562, p. 6.

The defendants, on the other hand, maintain that infringement and validity were not "clearly established" as the court indicated it had some reservations as to the plaintiff's case when it ruled upon the defendants' initial Rule 50 Motion. However, as courts have repeatedly held, "a clear showing of validity and infringement is satisfied where those issues have been tried and the fact-finder has determined that the patent in question was infringed

and is not invalid." *Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.,* 106 F.Supp.2d 696, 701(D.N.J.2000) (citing *Polymer Tech., Inc. v. Bridwell,* 103 F.3d 970, 973 (Fed.Cir.1996) and *Reebok Intern. Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1556 (Fed.Cir.1994)). In this case, the jury has spoken and the court has denied the defendants' motions for judgment as a matter of law and for a new trial. Therefore, the clear showing of validity and infringement has been met.

■ However, as the defendants point out, this merely establishes a presumption of irreparable harm. This presumption may be rebutted by factors such as whether the infringer has ceased its infringing activity, whether the patentee has granted licenses in the past such that it can be compensated for the infringement, and whether the patentee delayed in bringing the lawsuit. *Id.* at 701–702 (citing *Polymer,* 103 F.3d at 974). In order to rebut this presumption, the defendants first argue that they do not practice the infringing acts of the '176 and '265 patents. However, as this court previously stated, a jury has spoken on this issue and thus, this argument is not persuasive. The defendants next argue that there was evidence adduced at trial proving that the plaintiff is willing to license or sell its patents. On this point, the defendants are correct. Substantial evidence was adduced at trial showing that the plaintiff does not practice its inventions and exists merely to license its patented technology to others. Indeed, the plaintiff has made numerous comments to the media before, during, and after this trial indicating that it did not seek to enjoin eBay but rather sought appropriate damages for the infringement.[13] The Federal Circuit has observed that "the lack of commercial activity by the patentee is a significant factor in the calculus" of whether the patentee will suffer irreparable harm absent an injunction. *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1556 (Fed. Cir.1995). In the case at bar, the evidence of the plaintiff's willingness to license its patents, its lack of commercial activity in practicing the patents, and its comments to the media as to its intent with respect to enforcement of its patent rights, are sufficient to rebut the presumption that it will suffer irreparable harm if an injunction does not issue. Moreover, the plaintiff never moved this court for a preliminary injunction. If it believed that it was suffering irreparable harm by the defendants' continued infringement of its patents, such a motion would have been appropriate. This fact, while certainly not dispositive of the issue, lends additional weight in support of the defendants' arguments that the plaintiff will not be irreparably harmed absent an injunction. Therefore, after consideration of all the facts in this case, the court believes that the plaintiff will not suffer irreparable harm if the injunction does not issue. As such, this factor tips against an injunction.

### b. Adequate Remedy at Law

The plaintiff argues that it has no adequate remedy at law. The plaintiff points to an excerpt from a Federal Circuit case stating that

---

13. *See, e.g.,* Article, Patent Suit Could Sting eBay, Sept. 5, 2002 at *http:// news.com.com/2100–1017–956638.html* ("We are seeking reasonable royalties as permitted under the patent laws. It's not our goal to put eBay out of business. It's our goal to provide just compensation for the patent owner.") (quoting Scott Robinson, attorney for MercExchange); Article, eBay-Contested MercExchange Patents are on the Block, May 30, 2003 at *http://www.auctionbytes.com/cab/abn/y03/m05/i30/s01* ("[I]t is not our goal to enforce these patents, we want to sell off our Intellectual Property rights.") (quoting Mr. Woolston, inventor of the patents at issue).

[w]ithout the injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution, to promote the progress of the useful arts, would be seriously undermined. The patent owner would lack much of the leverage, afforded by the right to exclude, to enjoy the full value of his invention in the market place. Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.

*Smith Int'l*, 718 F.2d at 1577–78. On the other hand, the defendants note that money damages are an adequate remedy to compensate the plaintiff for any continuing infringement. *See Foster v. American Mach. & Foundry Co.*, 492 F.2d 1317, 1324, 182 U.S.P.Q. 1 (2d Cir.1974) (finding that a compulsory royalty was the appropriate remedy); *Boehringer*, 106 F.Supp.2d at 704 ("This is not to say that money damages are never adequate...."). As stated above, the plaintiff has licensed its patents to others in the past and has indicated its willingness to license the patents to the defendants in this case. *See supra* n. 13. The Federal Circuit has held that evidence showing that the patent holder is willing to license his patent rights "suggests that any injury suffered by [the patent holder] would be compensable in damages assessed as part of the final judgment in the case." *High Tech*, 49 F.3d at 1557. While the court is aware that many cases state that monetary damages are typically inadequate because it limits the patent holder from exercising its monopoly power, this is certainly an atypical case. Therefore, the court finds that in this particular case, the plaintiff has an adequate remedy at law, a factor weighing against the injunction.

### c. Public Interest

As Judge Ellis stated in *Odetics*, "[t]he public-interest factor often favors the patentee, given the public's interest in maintaining the integrity of the patent system." 14 F.Supp.2d at 795. While this is certainly the norm, there are instances where it is not in the public interest to enjoin the infringer's activities. For example, courts have denied injunctions where the infringed product was necessary for medical purposes. *See, e.g., Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 401 (Fed.Cir.1986) (catheter used for treatment of heart patients). Courts have also declined to enjoin an infringer's actions where the granting of an injunction would cause the infringer "irreparable hardship..., without any concomitant benefit to the patentee," finding such a result to be "inequitable." *Foster*, 492 F.2d at 1324. The plaintiff argues that in this case, there is not countervailing public interest that would be served through a denial of an injunction. The defendants disagree. The defendants argue that the public interest is not furthered by enjoining activities based on improvidently granted patents, again stating that because this court called the infringement and validity issues "close calls," the patents are suspect and an injunction should not issue. However, the jury returned a verdict upon which this court will enter judgment. Thus, this argument does not show that the public interest is in favor of denying the injunction.

The defendants also argue that because there is a growing concern over the issuance of business-method patents, which forced the PTO to implement a second level review policy, *see, e.g.*, Testimony of Q. Todd Dickinson, Tr. 1203:8–1204:22, and caused legislation to be introduced in Congress to eliminate the presumption of validity for such patents, *see, e.g.*, Business

Method Improvement Act of 2001, H.R. 1332, 107th Cong., Apr. 3, 2001, the public interest would not be served by such an injunction. While this argument is certainly not dispositive, it lends significant weight against the imposition of an injunction, particularly in this case where the patentee does not practice its patents, nor has any intention of practicing its patents. Moreover, in a case such as this, the public does not benefit from a patentee who obtains a patent yet declines to allow the public to benefit from the inventions contained therein. *See, e.g.,* Testimony of Q. Todd Dickinson, Tr. 1131: 8–10 (stating that the ability to patent an invention via the patent system is important "[b]ecause it allows other people to improve that invention, to build on it, and so building moves all technology, moves the system forward...."). In sum, the court believes the public interest factor equally supports granting an injunction to protect the plaintiff's patent rights, and denying an injunction to protect the public's interest in using a patented business-method that the patent holder declines to practice.

#### d. Balance of the Hardships

As expected, each party argues that the balance of the hardships tips in their favor. Upon review of the record and factors listed above, the court is of the opinion that the balance tips slightly in the defendants' favor. The plaintiff's patents have been found valid and willfully infringed by the defendants. While it is important to respect the rights of the patent holder, in this case, the plaintiff exists solely to license its patents or sue to enforce its patents, and not to develop or commercialize them. Any harm suffered by the plaintiff by the defendants' infringement of the patents can be recovered by way of damages. *See generally Foster,* 492 F.2d at 1324 (affirming district court's denial of permanent injunction where, after assessing the relative equities, the court properly concluded that the patentee would benefit from a compulsory royalty). If the court did enjoin the defendants here, the court would essentially be opening a Pandora's box of new problems. This case has been one of the more, if not the most, contentious cases that this court has ever presided over. From day one the parties have been unable to agree on anything, in fact, the only agreed stipulation at trial was that this court had subject matter jurisdiction. The court predicts that if it granted the plaintiff's request for a permanent injunction, the battle would continue to be as contentious as ever. For example, the defendants have argued that they can design around the patents with relative ease. The plaintiff, on the other hand, continues to strenuously assert that such a design around is impossible. *See* Dkt. 593, p. 7 ("MercExchange, of course, does not believe the proposed 'design-arounds' avoid infringement.... Nothing, however, prevents Defendants from implementing a 'true' design-around of the patents, if they can. But the evidence to date suggests that they cannot."). The court envisions contempt hearing after contempt hearing requiring the court to essentially conduct separate infringement trials to determine if the changes to the defendants' systems violates the injunction. This will result in extraordinary costs to the parties, as well as considerable judicial resources. In fact, the court would most likely be required to retain an expert in the field in order to determine if the new systems infringe on the patent. While the court understands that these reasons alone are not sufficient to deny an injunction to a patent holder, they are simply factors the court must consider when balancing the equities in this highly unusual case.

Moreover, the court notes that if the defendants continue to infringe the plaintiff's patents, the court will be more inclined to award enhanced damages for any

post-verdict infringement. *See, e.g., Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1259 (Fed.Cir.2000) (affirming district court's award of enhanced damages for post-verdict infringement as reasonable); *Corning Glass Works v. Sumitomo Electric U.S.A. Inc.*, 671 F.Supp. 1369, 1401, 5 U.S.P.Q.2d 1545 (S.D.N.Y.1987) ("To proceed [after an infringement determination] to manufacture and sell the same [infringing product] without changes designed to avoid infringement can only be construed as outright defiance or baseless optimism... [which entitles the patentee] to recover increased damages."). Thus, the plaintiff certainly will be compensated for any actions by the defendants in the absence of an injunction. Therefore, after consideration of all the factors discussed above, it appears that the balance of the hardships tips in favor of the defendants.

In sum, after consideration of all the arguments, the plaintiff's Motion for a Permanent Injunction is denied.

**2. Motion to Enforce Judge Friedman's Injunction Order of February 26, 2003, and for Order to Show why Defendant eBay, Inc. Should Not be Held in Contempt for Facilitating Violations of Judge Friedman's Injunction Order of February 26, 2003.**

In this Motion, the plaintiff alleges that defendant eBay has violated this court's February 26, 2003 injunction order by continuing to allow ReturnBuy and Jabil Global Services ("Jabil") to post items for sale on its website. Defendant eBay disputes that a show cause order is required, as ReturnBuy is no longer in business and the plaintiff has failed to show that Jabil is violating the injunction order or that eBay is inducing or aiding and abetting that violation.

On February 26, 2003, the court entered an injunction order against ReturnBuy, which was once a party to this action. In the order, the court stated that

ReturnBuy further agrees and stipulates that it, its officers, agents, servants, employees and attorneys, and any person in active concert or participation with them who receive actual notice of this judgment are permanently enjoined from infringing the above claims of the '265 Patent by making, using, selling or offering for sale a computer-implemented service, system, and/or process(es) which facilitates the posting of items or goods for sale or auction through or by an electronic online market or auction, that also employs a digital imaging means and a textual description of the item or good for sale or auction, and any colorable variation thereof.

Notwithstanding the foregoing, this injunction is subject to the separate License Agreement and Settlement Agreement entered into by and between MercExchange and ReturnBuy.

Nothing in this Order shall be construed as affecting, in any way, the claims or defenses that are currently being litigated between eBay, Half.com and MercExchange in this case.

Judgment and Order, Dkt. 278 (Feb. 26, 2003). After the court issued this order, the plaintiff appealed the order based on the court's addition of the final sentence cited above. Upon motion to dismiss by the defendants, the Federal Circuit dismissed the appeal, holding that the plaintiff failed to show that there was a "serious, perhaps irreparable consequence or that the order can be effectually challenged only by immediate appeal." Dkt. 564, Ex. I, p. 3. The Federal Circuit noted that the plaintiff could always file a motion for contempt in the district court if it believed ReturnBuy violated the order. The plaintiff now seeks the court to enter

a show cause order for eBay's violation of this injunction order.

■ The Fourth Circuit has held that [t]o establish civil contempt, each of the following elements must be shown by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir.2000); *see also In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir.1995) ("The burden is on the complainant to prove civil contempt by clear and convincing evidence."). In patent cases, a court must make two determinations before entering a finding of contempt. "The first is whether a contempt hearing is an appropriate forum in which to determine whether a redesigned device infringes, or whether the issue of infringement should be resolved in a separate infringement action. . . . [T]he second question . . . is whether the new accused device infringes the claims of the patent." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1349 (Fed.Cir.1998) (citing *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1530–32 (Fed. Cir.1985)). However, it remains within the court's "broad discretion to determine how to best enforce its injunctive decrees." *Id.*

■ In this case, the plaintiff alleges that because all of ReturnBuy's assets, except for the license agreement with MercExchange, were sold to Jabil following ReturnBuy's dissolution in bankruptcy, and because Jabil continues to list items for sale under ReturnBuy's name on eBay's website, that it is in contempt of this court's order. Moreover, the plaintiff argues that eBay is also in contempt for permitting Jabil to continue to post items for sale on its website. However, the only evidence with respect to this before the court is (1) ReturnBuy's assets were sold to Jabil; (2) Jabil sold items under ReturnBuy's name following the entry of the injunction; (3) Jabil sold the items on the eBay website; and (4) following the jury's verdict in this case, no items are being sold under either ReturnBuy or Jabil's names on eBay. This evidence is a far cry from the clear and convincing evidence necessary for this court to issue a show cause order. The plaintiff has offered nothing to show that Jabil is utilizing the same infringing methods that ReturnBuy used. The first step in the Federal Circuit's test to determine contempt is to determine whether a redesigned product infringes the patent. "That decision turns on a comparison between the original infringing product and the redesigned device." *Id.* The plaintiff assumes that because Jabil is using many of ReturnBuy's assets and business practices that it is indeed infringing. Furthermore, the plaintiff assumes that eBay is somehow aiding and abetting this infringement. However, the court is not willing to make these assumptions at this time. Therefore, the plaintiff's Motion is denied.

### 3. Renewed Motion for Judgment as a Matter of Law.

■ In this Renewed Motion, the plaintiff seeks JMOL that the claims of the '176 and '265 patents are valid. Specifically, the plaintiff argues that the jury's verdict demonstrates that no reasonable jury could determine that (1) the '176 and '265 patents are invalid for failure to comply with the enablement or written description requirements of section 112; (2) the '176 patent is invalid due to anticipation or obviousness; or (3) the '265 pat-

ent is invalid due to anticipation or obviousness. The plaintiff contends that these issues should not be retried if the case is remanded to this court for another trial. The defendants on the other hand object to the renewed motion for JMOL, asserting that the court should enter JMOL in their favor regarding the invalidity of the patents.

Rule 50(b) states that if a verdict was returned, the court has three options when ruling on a renewed motion for JMOL. It can allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Fed.R.Civ.P. 50(b). In this case, the plaintiff has essentially reargued its opposition to the defendants' renewed motions for JMOL, which are discussed above. The court finds that there was substantial evidence presented by the defendants to contest the validity of the patents at issue. The jury found that this evidence was not clear and convincing. However, such a finding by this jury does not mean that no reasonable jury would have viewed the evidence in the same way. As such, this court will not direct the entry of JMOL, but rather allow the jury's verdict to stand. Therefore, the plaintiff's Motion is denied.

### 4. Motion for Prejudgment and Postjudgment Interest.

Next the plaintiff moves for prejudgment and postjudgment interest. The defendants do not object to the imposition of postjudgment interest pursuant to 28 U.S.C. § 1961(a). As such, the court grants the plaintiff's Motion for Postjudgment Interest. The defendants do object to the plaintiff's Motion for Prejudgment Interest, specifically the interest rate and method of compounding requested by the plaintiff.

The award of prejudgment interest is permitted by 35 U.S.C. § 284. The Supreme Court interpreted this statute and held that "prejudgment interest should ordinarily be awarded... to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *accord Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir.1986). The Court reasoned that "[a]n award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." *Devex*, 461 U.S. at 655–56, 103 S.Ct. 2058. While prejudgment interest is ordinarily awarded, this court is aware that there may be circumstances where such an award is not appropriate. *Id.* at 657, 103 S.Ct. 2058. However, in this case, the court believes that there are no circumstances that indicate an award of prejudgment interest is not appropriate and will grant the plaintiff's Motion for Prejudgment Interest.

The next step is to determine the interest rate and compounding method to be used to compute the prejudgment interest. The plaintiff seeks prejudgment interest using prime rate compounded quarterly. The plaintiff provides no reason why prime rate should be used; however, it does suggest that because the defendants provide their financial data on a quarterly basis as required, compounding the interest quarterly is appropriate. The defendants, on the other hand, contend that the interest rate be no more than the one-year Federal Treasury rate, compounded annually. The defendants argue that this rate is appropriate because prejudgment interest "is awarded to compensate for the delay in payment of the damages, and not to punish

the infringer." *Underwater Devices Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1389 (Fed.Cir.1983). Moreover, the defendants maintain that this is appropriate because the plaintiff failed to provide any evidence that it was forced to borrow money at any higher rate, citing *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed.Cir.1997). While the plaintiff disputes that it is required to provide any evidence, based on another Federal Circuit case, *see Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 939 F.2d 1540, 1545 (Fed.Cir.1991), the court finds the *Laitram* case persuasive because of its more recent date.

In this case, the court will apply an interest rate equal to the one-year Federal Treasury rate, compounded quarterly. The plaintiff has offered no evidence, even after the defendants raised the issue, that it was forced to borrow money at a rate equal to or above the prime rate. Furthermore, because the defendants are required to provide financial data on a quarterly basis, compounding the interest quarterly will be a relatively simple process.

### 5. Motion for Post–Verdict and Post-judgment Accounting.

In this Motion, the plaintiff seeks post-verdict and postjudgment accounting, including: (1) a monthly accounting from April 1, 2003 through the date of this order of gross merchandise sales for fixed-price goods; (2) supplemental compensatory damages from April 1, 2003 through the date of this order based upon the jury's reasonable royalty rates; (3) a determination of liability for the defendants' post-judgment sales of infringing services prior to the effective date of any injunction this court might enter; and (4) enhancement of supplemental damages. The defendants object to this request, arguing three main points. First, the defendants argue that the plaintiff has waived the right for an accounting as it failed to raise it in the Final Pretrial Order. The defendants cite *Lucent Tech., Inc. v. Newbridge Networks Corp.,* 168 F.Supp.2d 269, 273 (D.Del.2001) for support. Second, the defendants maintain that pursuant to 28 U.S.C. § 1292(c)(2), the court should not take action on the accounting issue until after any appeals of the case are completed. Finally, the defendants contend that there is no reasonable royalty rate to use as the verdict form did not specify what royalty rate the jury utilized in determining the damages awarded.

■ With respect to the defendants' first argument, the plaintiff has not waived its right to seek an accounting, as it made the request in the initial complaint and the first amended complaint. The cases cited by the parties make it clear that provided the defendants received notice that the plaintiff would seek an accounting, it does not matter if it is not in the Final Pretrial Order as opposed to the complaint. *See, e.g., Lucent,* 168 F.Supp.2d at 273 (barring the plaintiff from obtaining an accounting because it "did not request an accounting in the Final Joint Pretrial Order or in the Amended Complaint.").

■ The second and third arguments put forth by the defendants are more difficult to dismiss. Both of these arguments revolve around the complexity, expense and uncertainty surrounding the completion of an accounting. As stated above, the jury awarded the plaintiff more than it was asking in some circumstances, and less in others. Moreover, the verdict form did not include a question seeking the royalty rate used by the jury in determining the damage award. The defendants maintain that this uncertainty renders an accounting difficult, if not impossible. Given that this has the potential to create a litigation unto itself, the court will defer its ruling on this until after any appeals of this case are concluded. *See* 28 U.S.C.

§ 1292(c)(2) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a judgment in a civil action for patent infringement which . . . is final except for an accounting."); *see also McCullough v. Kammerer Corp.*, 331 U.S. 96, 98, 67 S.Ct. 1165, 91 L.Ed. 1365 (1947). The court notes that the plaintiff will not suffer any great harm from this decision as the court will certainly consider awarding enhanced damages for any post-verdict infringement following the result of any appeal. *See supra* section II.B.1.d. Accordingly, this issue will be removed from the active docket pending appeal of the case to the Federal Circuit. Following any such appeal, the parties are instructed to ask the court to return the matter to the active docket if necessary.

### 6. Motion for Enhanced Damages Under 35 U.S.C. § 284 and Attorney Fees Under 35 U.S.C. § 285.

In this motion, the plaintiff seeks enhanced damages based on the jury's finding of willful infringement. In addition, the plaintiff seeks the award of attorneys' fees. In response, the defendants claim that the court should enter judgment as a matter of law in their favor as there was insufficient evidence for a finding of willfulness. In the alternative, the defendants maintain that despite the finding of willfulness, enhanced damages and attorneys' fees are not warranted in this "close" case.

### a. Enhanced Damages

 "Upon a finding of willful infringement, a district court may, at its discretion, grant up to treble damages." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed.Cir.1999) (citing 35 U.S.C. § 284). However, "while willful infringement may allow enhanced damages, such finding does not compel the district court to grant them. Instead, the decision to grant or deny enhanced damages

remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances." *Id.* (internal citations omitted). "The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read*, 970 F.2d at 826. In determining whether a particular case requires enhanced damages, the Federal Circuit has provided a number of factors a court should consider. These include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) the remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *See id.* at 827. The plaintiff has alleged that many of these factors weigh in favor of enhancing the damages. The court will address each in turn.

### (i) whether the infringer deliberately copied the ideas or design of another

The plaintiff alleges that the defendants, after receiving notice of the plaintiff's patents, copied the ideas contained therein. Specifically, the plaintiff argues that eBay's purchase of Half.com, PayPal, and the incorporation of the "Buy-It-Now" feature all contributes to the conclusion that the defendants were copying the ideas in the patents. The defendants maintain that their success did not arise from the use of anything contained in the plaintiff's

patents. Moreover, the defendants argue that the patents offer no business or engineering guidance which the defendants could copy. This court agrees. While the jury found that there was insufficient evidence to find these patents invalid for lack of enablement, there was expert testimony describing the lack of source code and other features which would allow another to implement these patents. Moreover, eBay was using payment processors long before it received notice of the '265 patent, despite the fact that the purchase of PayPal occurred following that time. Therefore, the court finds that this factor does not weigh in favor of enhancing the damages.

### (ii) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed

With respect to the second factor, the court has fully addressed the issue of willfulness in the defendants' Motion for Judgment as a Matter of Law. *See supra* section II.A.1.a. Based on this same reasoning, the court finds that this factor weighs in favor of enhanced damages.

### (iii) the infringer's behavior as a party to the litigation

The plaintiff spends almost 20 pages in its Motion detailing the defendants' "abusive and expense-enhancing litigation tactics." *See* Dkt. 574, pp. 7–24; *see also* Dkt. 594, pp. 11–17. In response, the defendants spend considerable time detailing the plaintiff's behavior during this litigation. *See* Dkt. 581, pp. 12–24. These detailed descriptions of the parties' actions in this case are certainly not necessary, as the court is all too familiar with the close to 600 documents filed in this case. This case was bitterly fought from day one. However, neither side comes to this stage in the case with perfectly clean hands. As such, the court will not use the conduct of either side as a basis to grant or deny the enhancement of damages.

### (iv) the defendant's size and financial condition

The next factor the court must consider is the defendant's size and financial condition. The plaintiff argues that because defendant-eBay is a highly successful company, with first quarter 2003 profits of over $380 million, that trebling the damages is the only way the defendants would feel the punitive impact from their willful infringement. The defendants maintain that reliance on the fact that eBay is a "deep pocket" is improper and that their size and financial condition should only be a minor consideration. *See Odetics*, 14 F.Supp.2d at 800. This court agrees. While the fact that eBay is such a large and wealthy corporation is certainly a factor in determining whether to enhance the damages, the court will only give it minor consideration when weighing the totality of circumstances.

### (v) the closeness of the case

The plaintiff maintains that this case was not close, as the defendants were found to have infringed both patents and all invalidity defenses were rejected. Moreover, the fact that the jury found willfulness by clear and convincing evidence warrants a finding that the case was not close. The defendants, on the other hand, argue that this case was extremely close, as is indicated by the fact that the jury found that neither defendant indirectly infringed the '176 patent and that Half.com did not indirectly infringe the '265 patent. In addition, the fact that the court found that the '051 patent, the patent which comprised 75% of the damages sought by the plaintiff, invalid on summary

judgment further supports the finding that the case was close. As this court held in the defendants' first Rule 50 Motion, whether or not there was sufficient evidence on willfulness was a close call and the court reserved the right to revisit the issue after the jury returned its verdict. Therefore, the court finds that the case was sufficiently close, a factor that weighs against the imposition of enhanced damages. *See generally Modine Mfg. Co. v. The Allen Group,* 917 F.2d 538, 543 (Fed. Cir.1990) (finding no abuse of discretion where district court refused to enhance damages because willfulness was "sufficiently close on the evidence," despite the fact that the jury had found willfulness by clear and convincing evidence).

### (vi) the duration of the defendants' misconduct

The plaintiff asserts that enhanced damages are warranted because the "defendants' infringing conduct has lasted for two years and they have no intention of ceasing the infringement." However, as support for this factor, the plaintiff again relies on the fact that the defendants did not obtain an opinion of counsel.[14] The court notes that this litigation has been going on for almost two years and that the plaintiff never filed a motion for a preliminary injunction to prevent the defendants from continuing the infringement during the pendency of this litigation. The court will not allow the plaintiff to now use that fact to its advantage. Therefore, the court finds that this factor does not weigh in favor of enhanced damages.

### (vii) the remedial action by the defendants

With respect to this factor, the plaintiff claims that the defendants made a deliberate decision not to undertake any remedial actions by not designing around the patent as they claim they could have easily done at a cost of less than $15,000. The plaintiff claims that the defendants' refusal to take such remedial action is a further indication of bad faith and the need for a punitive component to the damages award. The court agrees. The defendants stressed the fact that they could have designed around the patents with only a few man-hours and very little expense, but failed to do so. As such, this factor weighs in favor of enhanced damages.

### (viii) the defendants' motivation for harm

The plaintiff did not allege that the defendants' motivation was to harm it or Mr. Woolston, nor is there any evidence of such. Therefore, the court will not consider this factor.

### (ix) whether the defendants attempted to conceal their misconduct

Once again, there has been no indication that the defendants attempted to conceal their misconduct, nor has the plaintiff made such an allegation. Therefore, the court will likewise not consider this factor.

In sum, after careful review of all the factors for and against enhancing damages in this case, the court finds that there is an insufficient basis to make such an award. Therefore, the plaintiff's Motion with respect to enhanced damages is denied.

---

**14.** In addition, the plaintiff implies that because the defendants have indicated that they will appeal the verdict, they should be punished for this continued effort. The court finds this argument incredible, especially given the fact that all through this litigation, particularly after the court found the '051 patent invalid, the plaintiff indicated its intention to appeal this case. In fact, the plaintiff has already made one unsuccessful appeal in this case. The fact that the defendants intend to file an appeal is completely irrelevant to the court's determination of enhanced damages.

### b. Attorneys' Fees

In this portion of the Motion, the plaintiff also seeks attorneys' fees pursuant to 35 U.S.C. § 285. This section provides that in exceptional cases, the court may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. "The trial judge's discretion in the award of attorney fees permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed.Cir.1996). The court notes that many of the factors cited are the same as those discussed above with respect to enhanced damages. Therefore, for the reasons set forth above, the court finds that an award of attorneys' fees is not warranted in this case. Accordingly, the plaintiff's Motion is denied.

### 7. Motion for Entry of Final Judgment.

The plaintiff seeks entry of final judgment, based on the jury's verdict and resolution of the post-trial motions. While the court agrees that the entry of final judgment is required, it does not grant the final judgment sought by the plaintiff. Rather, the court enters final judgment consistent with the jury's verdict and the rulings on the above post-trial motions. Accordingly, the Clerk is directed to enter judgment for the plaintiff in the amount of $29.5 million. This consists of $10.5 million for eBay's direct infringement of the '265 patent; $14.5 million for Half.com's direct infringement of the '265 patent; and $4.5 million for Half.com's direct infringement of the '176 patent. Moreover, this judgment is to be entered with prejudgment interest in the amount of the one-year Federal Treasury rate, compounded quarterly, and postjudgment interest at the standard rate.

### III. Conclusion

For the reasons discussed above, the court makes the following rulings: (1) Half.com's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on the '176 Patent is **DENIED**; (2) eBay and Half.com's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on the '265 Patent is **DENIED**; and (3) eBay and Half.com's Renewed Motion to Strike Testimony of Plaintiff's Damages Experts, Motion for New Trial, or Motion for Judgment as a Matter of Law is **DENIED in part** and **GRANTED in part**; (4) the plaintiff's Motion for Entry of a Permanent Injunction Order is **DENIED**; (5) the plaintiff's Motion to Enforce Judge Friedman's Injunction Order of February 26, 2003, and for Order to Show why Defendant eBay, Inc. Should Not be Held in Contempt for Facilitating Violations of Judge Friedman's Injunction Order of February 26, 2003 is **DENIED**; (6) the plaintiff's Renewed Motion for Judgment as a Matter of Law is **DENIED**; (7) the plaintiff's Motion for Prejudgment and Postjudgment Interest is **GRANTED**, with the exception of the interest rate used; (8) the plaintiff's Motion for Post–Verdict and Postjudgment Accounting is **DEFERRED** pending appeal, and the Clerk is **INSTRUCTED** to remove this Motion from the court's active docket; (9) the plaintiff's Motion for Enhanced Damages Under 35 U.S.C. § 284 and Attorney Fees Under 35 U.S.C. § 285 is **DENIED**; and (10) the plaintiff's Motion for Entry of Final Judgment is **GRANTED in part** and **DENIED in part**.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record.

It is so **ORDERED**.