**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FLEXIBLE LIFELINE SYSTEMS, INC.,
*Plaintiff-counter-claim-defendant-Appellee,*

v.

PRECISION LIFT, INC.; JOHN
TOLLENAERE,
*Defendants-counter-claimants-Appellants.*

No. 10-35987

D.C. No.
6:10-cv-00044-
DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
May 5, 2011—Seattle, Washington

Filed August 22, 2011

Before: Mary M. Schroeder, M. Margaret McKeown, and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Robert L. Sterup, Shane P. Coleman, and Michael P. Manning (argued), Holland & Hart LLP, Billings, Montana, for the defendants-appellants.

Lisa H. Meyerhoff (argued), Myall S. Hawkins, Baker & McKenzie LLP, Houston Texas; Jean E. Faure, Jason T. Holden, Faure Holden Attorneys At Law, Great Falls, Montana, for the plaintiff-appellee.

## OPINION

PER CURIAM:

Defendants-appellants John Tollenaere and Precision Lift, Inc. (collectively "Precision") appeal from the district court's

grant of a preliminary injunction against them in an action for copyright infringement by plaintiff-appellee Flexible Lifeline Systems, Inc. ("Flexible"). The district court found that Flexible was likely to succeed in its infringement suit, and granted the injunction relying on long-standing precedent of this circuit that presumes irreparable harm in a copyright infringement case upon a showing of likelihood of success on the merits. Precision appeals, claiming that such a presumption runs afoul of two recent Supreme Court decisions, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) and *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). We agree, and therefore vacate the injunction and remand.

## BACKGROUND

John Tollenaere formed Precision in the 1990s to market a helicopter rescue lift product he had patented. In or around 2000, Precision expanded its business to include sales of aircraft maintenance stands and platforms for fixed- and rotor-wing aircraft.[1] Precision did not manufacture any of its own stands or platforms. Rather, Precision sold stands or platforms manufactured by others, even though it claims that it also had the ability to independently design aircraft maintenance stands. In early 2001, Precision again sought to increase its business and became the sole distributor for aircraft maintenance stands designed and manufactured by West Coast Weld Tech, Inc. ("West Coast").

West Coast allowed Precision to use the technical drawings of the stands manufactured by West Coast in order for Preci-

---

[1]Maintenance stands and platforms are used by aircraft maintenance personnel to stand on when working on aircraft. They provide greater stability and an easier base from which to work than a ladder. Due to the varied size and shape of different aircraft, maintenance stands come in a variety of sizes, shapes, and configurations. In addition, while there are generic stands available, stands and platforms are sometimes specifically designed to fit a particular aircraft. This dispute involves stands and platforms specifically designed for a particular aircraft.

sion to market the stands, but West Coast always claimed ownership of the drawings.[2] All of the drawings at issue were stamped by West Coast as its confidential and proprietary information. West Coast never transferred or sold ownership of the drawings, or any of its intellectual property, to Precision. Precision never challenged West Coast's ownership or otherwise indicated that Precision believed it had any ownership interest in the drawings. In fact, in addition to the "confidential and proprietary information" stamp West Coast used on all of its drawings, at one point Precision requested that West Coast add a watermark across the face of the drawings that said, "Property of West Coast Weld Tech" to more clearly identify the drawings as West Coast's property.

In July of 2008, Precision and West Coast entered into a joint venture to compete for a United States Air Force contract to manufacture and sell maintenance stands for C-130 Hercules aircraft. Under this arrangement, West Coast was responsible for designing and manufacturing the stands, and Precision was responsible for submitting the bid to the government and handling the bid process. Rather than a single maintenance stand, the government requested bids for a wraparound maintenance platform comprised of several stands for use during extensive aircraft inspections.

West Coast included provisions to protect its ownership of intellectual property in the Joint Venture Agreement ("JVA"). First, the JVA expressly provides that each party acknowledges the need to disclose its confidential and proprietary information to the other for the purposes of the venture. Second, the JVA contains an agreement that each party will not disclose the confidential and proprietary information of the other party to anyone else, except to the government, and even then only as necessary to complete their duties in per-

---

[2]As will be shown, Flexible is the plaintiff here because West Coast sold its assets, including the rights to the drawings at issue, to Flexible in 2009.

forming the venture. Third, the JVA expressly requires each party to promptly return the other party's confidential and proprietary information upon termination of the venture or at the request of the other party.

The parties dispute Precision's role in the actual design of the maintenance platforms and the creation of the drawings. Precision contends it assisted in the design of custom, wrap-around stands, and claims that it owns, or at least co-owns, the drawings as a result of its part in their creation. Primarily, Precision claims that its employees assisted in the design process (and thus presumably had a role in creation of the design drawings) by going to on-site visits with West Coast engineers and employees to understand the customer's requirements.

Flexible disagrees, countering that Precision did not contribute to the design and could not have done so because it employed no engineers and did not have manufacturing or design capabilities. West Coast, on the other hand, employed an engineer and two draftsmen, and Flexible contends that West Coast alone designed the maintenance stands and created the drawings at issue here. Moreover, the JVA specified that West Coast was responsible for all engineering, technical design work, and manufacturing, while Precision was responsible for completing the bid proposal and dealing with the government during the bid process.

In July 2008, Precision submitted the initial proposal for the Air Force C-130 platform, which, as required, included the initial drawings. These drawings had to be submitted for evaluation and revisions prior to submitting the final bid. Thereafter, Precision communicated with the Air Force regarding the proposal and West Coast continued its design work on the stands, which included making revisions to the design and technical drawings.

In 2009, West Coast encountered significant financial problems. Unable to continue operating on its own, West Coast

sold the majority of its assets, including much of its intellectual property, to Flexible. In particular, the purchase agreement specified that "ALL drawings, details, production schedules, etc. for design, construction and installation of maintenance platforms for aircraft and land vehicles" were included in the purchase. After the purchase, Flexible continued what had been West Coast's work on the final C-130 drawings and forwarded them to the Air Force in December 2009. Meanwhile, Precision asked Flexible to discuss formalizing their continuing business relationship in light of Flexible's purchase of West Coast's assets.

On January 27, 2010, Flexible responded to Precision's requests to formalize their business relationship by advising Precision that Flexible was not interested in continuing a joint venture. Flexible presented Precision with alternate proposals, including one by which Precision would become a sales agent for Flexible's products. Rather than proceed with either of Flexible's proposals, Precision found another joint venture partner to take West Coast's place in the C-130 maintenance stand bid proposal. Precision joined with Carbis, one of Flexible's competitors, and submitted a final bid for the project totaling over $61 million. Flexible did not submit a bid of its own for the proposal. The Air Force eventually awarded the contract to another competitor at a contract price approximately $9.5 million higher than Precision's bid, likely due to the dispute between Precision and Flexible as to the ownership of the drawings. Precision protested the award, but the Air Force ultimately denied the protest.

In the meantime, Flexible filed applications to register the drawings it had purchased from West Coast, and the Copyright Office granted the registrations effective June 23, 2010. Flexible then filed its complaint and an application for injunctive relief to enjoin Precision from using Flexible's intellectual property on the C-130 bid. The district court denied the motion for a temporary restraining order, but set a hearing on the preliminary injunction. Prior to the hearing, Flexible filed

an amended application for injunctive relief, expanding the scope of the relief sought to include enjoining Precision from using any of the drawings for maintenance stands for aircraft other than the C-130. In both its application and supplemental application, Flexible argued only that it was entitled to a presumption of irreparable harm and did not offer any evidence of actual harm that it was likely to suffer in the absence of an injunction. The district court held a hearing on the preliminary injunction application on October 14 and 19, 2010. Following the hearing, the court granted the injunction except as to the use of the drawings for the C-130 bid.

The district court issued findings of fact and conclusions of law in granting Flexible's injunction application. It found that the C-130 drawings at issue were created by West Coast employees, and that West Coast gave Precision the drawings to use for the C-130 contract proposal. The court also found that: (1) the joint venture agreement required Precision to return all of West Coast's proprietary information upon the termination of the agreement; (2) Flexible was likely to show that Precision reproduced and used Flexible's drawings without permission or license; and (3) Precision had distributed copies of Flexible's drawings without permission or license. However, the court noted that Flexible "elicited no proof suggesting that it entered competing bids with contracts that Precision Lift, Inc. procured through the use of Flexible Lifeline Systems, Inc.'s platform drawings." On the other hand, it observed that "[i]f a preliminary injunction is issued, Precision Lift, Inc. may lose existing or potential contracts."

The district court's conclusions of law included the following: (1) Flexible is likely to prove its drawings are copyrightable; (2) West Coast was the sole author and creator of the drawings; (3) Flexible had valid copyrights in the drawings; and (4) Flexible was likely to succeed on the merits of its copyright infringement claim. The district court did not make a finding on whether Flexible would be irreparably harmed absent an injunction, but concluded that "[b]ecause Flexible

Lifeline Systems, Inc. has shown a likelihood of success on the merits, Flexible Lifeline Systems, Inc. is presumed to be irreparably harmed." The district court did not analyze the issue of irreparable harm, but based on our precedent concluded "[w]hen a plaintiff is likely to succeed on the merits of a copyright infringement claim, irreparable harm is presumed. *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003)."

The court also found a "public . . . interest in the efficient and economical performance of contracts," but because of the additional money the government would have to pay on the C-130 contract, the public interest would not be served by preventing Precision from using the drawings for that contract. The court concluded that Flexible was entitled to a preliminary injunction against Precision for the immediate return of all intellectual property Precision had received from West Coast, which was now owned by Flexible, and prohibited Precision from using such intellectual property other than in connection with the bid proposal on the Air Force C-130 contract. Precision timely appealed the issuance of the preliminary injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## DISCUSSION

### I. STANDARD OF REVIEW

A district court's decision regarding preliminary injunctive relief is subject to limited review. *Harris v. Bd. of Supervisors, L.A. Cnty,*, 366 F.3d 754, 760 (9th Cir. 2004) (review "limited and deferential") (internal quotation marks omitted); *Sw. Voter Registration Educ. Pro. v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (same). We will reverse only if the district court has abused its discretion. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "The district court, however, 'necessarily abuses its discretion when it bases its decision on an erroneous legal standard or

on clearly erroneous findings of fact.' " *Earth Island Inst. v. United States Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003) (quoting *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir. 2001) (en banc)). If "the district court is alleged to have relied on an erroneous legal premise, we review the underlying issues of law de novo." *Id.*

## II. STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

The Copyright Act provides that a court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Thus, injunctive relief to prevent copyright infringement is available as an equitable remedy in the court's discretion. In order to obtain preliminary injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008)). This is commonly referred to as the "four-factor test." *See, e.g., Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). Although Precision also argues that the district court erred in finding Flexible demonstrated a likelihood of success on the merits, the primary issue in this appeal is whether the district court used an erroneous legal standard by presuming irreparable harm in issuing injunctive relief.

### A. Presumption of Irreparable Harm

[1] We have long held that irreparable harm can be presumed in a copyright infringement case upon a showing of a likelihood of success on the merits by the copyright owner. *Apple Computer, Inc. v. Formula Intern. Inc.*, 725 F.2d 521, 525 (9th Cir. 1984); *see also Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995) (noting the general

requirement of showing irreparable harm, but stating "[i]n a copyright infringement action, however, the rules are somewhat different. A showing of a reasonable likelihood of success on the merits raises a *presumption* of irreparable harm.").**³**

**[2]** Based on our precedent, the district court granted the preliminary injunction after finding a likelihood of success on the merits, without inquiring into whether Flexible would actually suffer any irreparable harm absent relief. Instead, the district court relied solely on the presumption of irreparable harm, citing our 2003 decision *Elvis Presley*, 349 F.3d 622. Precision objects, arguing that this circuit's standard, as expressed in *Elvis Presley* and relied upon by the district court, has been effectively overruled by the Supreme Court. According to Precision, after the Supreme Court's *eBay* and *Winter* decisions in 2006 and 2008, this circuit's long-standing practice of presuming irreparable harm upon the showing of likelihood of success on the merits in a copyright infringement case is no longer good law. Precision is correct. As we prophetically proclaimed in *Elvis Presley* that "[t]he King is dead,"**⁴** 349 F.3d at 624, referring to Elvis Presley the man, today we proclaim that the "*King*" is dead, referring to *Elvis Presley* the case — to the extent it supported the use of a presumption of irreparable harm in issuing injunctive relief.

---

**³**We were not alone in presuming harm. Indeed, nearly thirty years ago the prevailing view among the circuits was that "[a] copyright plaintiff who [made] out a prima facie case of infringement [was] entitled to a preliminary injunction without a detailed showing of irreparable harm." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (citing 3 *Nimmer on Copyright* § 14.06[A], at 14-50, 14-51 & n.16 (collecting authorities)).

**⁴***See Elvis Presley*, *Wikipedia*, http://en.wikipedia.org/wiki/Elvis_ Presley (last visited June 1, 2011) (explaining that Elvis Presley is "[a] cultural icon, [ ] widely known by the single name Elvis [and] is often referred to as the 'King of Rock and Roll' or simply 'the King' ").

### 1.    *eBay Inc. v. MercExchange, L.L.C.*

In *eBay*, the Supreme Court reviewed a request for a permanent injunction after a jury found eBay had infringed MercExchange's patent. The district court refused to issue an injunction notwithstanding the infringement, finding "that a 'plaintiff's willingness to license its patents' and its 'lack of commercial activity in practicing the patents' would be sufficient to establish that the patent holder would not suffer irreparable harm." *eBay*, 547 U.S. at 393 (quoting *MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 712 (E.D. Va. 2003)). The Federal Circuit reversed the district court, "applying its 'general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances.' " *Id.* at 391 (quoting *MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005)).

**[3]** The Supreme Court stated that the district court's "categorical rule" regarding irreparable harm "cannot be squared with the principles of equity adopted by Congress." *eBay*, 547 U.S. at 393. However, by applying a "general rule," the Federal Circuit had "departed in the opposite direction [as the district court] from the four-factor test." *Id*. The Court explained that "[j]ust as the district court erred in its categorical denial of injunctive relief, the Court of Appeals erred in its categorical grant of such relief." *Id.* at 394. The Court was very clear that even where infringement had been proven, a plaintiff may not be granted injunctive relief until he satisfies the four-factor test, which includes demonstrating irreparable injury. *Id.* (holding that because "neither court below correctly applied the traditional four-factor framework that governs the award of injunctive relief, we vacate the judgement of the Court of Appeals, so that the District Court may apply that framework in the first instance.")

**[4]** Flexible tries to distinguish *eBay* on the grounds that *eBay* involved patent infringement, not copyright infringement, and argues that the presumption remains valid for a

copyright infringement case. However, the Court's reasoning in *eBay* cannot be so narrowly read. The Court based its conclusions on principles of equity, citing the Patent Act's authorization to grant an injunction "in accordance with the principles of equity." *Id.* at 392. The Court made clear that these principles apply equally to copyright infringement by discussing the Copyright Act and drawing parallels between patent and copyright protection throughout its analysis. It explained that its "approach is consistent with our treatment of injunctions under the Copyright Act," *id.*, and noted that "[l]ike the Patent Act, the Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright,' " *id.* (quoting 17 U.S.C. § 502(a)). The Court emphasized that it "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed," and based on its experience in copyright cases, similarly rejected the invitation to adopt a categorical rule in patent infringement cases. *Id.* at 392-93. Thus, under *eBay*, a presumption of irreparable harm is equally improper in a case based on copyright infringement as it is in a case based on patent infringement.

**[5]** Nor does the fact that *eBay* concerned a permanent injunction rather than a preliminary injunction sufficiently distinguish the cases to result in a different outcome. The Supreme Court has been more than clear on this point:

> Finally, the Ninth Circuit distinguished [*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)] on the ground that the District Court in that case refused to issue a permanent injunction after a trial on the merits whereas in this case the District Court denied preliminary injunctive relief. We fail to grasp the significance of this distinction. The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the

plaintiff must show a likelihood of success on the merits rather than actual success.

*Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1987). Indeed, the *eBay* Court relied on a preliminary injunction case in reaching its holding. 547 U.S. at 391 (citing *Amoco*, 480 U.S. at 542)). Thus, we conclude that *eBay* applies with equal force to preliminary injunction cases as it does to permanent injunction cases.

## 2.   *Winter v. Natural Resources Defense Council, Inc.*

If we harbored any doubts about the applicability of *eBay* in the preliminary injunction context, they have been dispelled by the Supreme Court's decision in *Winter*. In *Winter*, the Supreme Court reaffirmed the equitable nature of the four-factor framework and applied it to a case involving a preliminary injunction. The district court had issued an injunction restricting the U.S. Navy's ability to conduct war readiness exercises off the coast of Southern California, and the Ninth Circuit affirmed. *Natural Res. Def. Council, Inc. v. Winter*, 518 F.3d 658, 697 (9th Cir. 2008). We held that the district court need only find a *possibility* of irreparable harm to issue an injunction and rejected the Navy's argument that any claim of irreparable injury was merely speculative. *Id.*

[6] The Supreme Court reversed, holding that "the Ninth Circuit's 'possibility' standard is too lenient." *Winter*, 555 U.S. at 22. The Court explained that its "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis original). The Court clarified that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* Thus, *Winter* reaffirms the principles relied upon in *eBay*: a plaintiff must satisfy the four-factor test in

order to obtain equitable injunctive relief, even if that relief is preliminary. The Court cautioned that

> [a] preliminary injunction is an extraordinary remedy *never awarded as of right*. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.

*Id.* at 24 (quotation marks and citations omitted) (emphasis added). If our past standard, which required a plaintiff to demonstrate at least a possibility of irreparable harm, is "too lenient," then surely a standard which presumes irreparable harm without requiring any showing at all is also "too lenient."

### B.   The Ninth Circuit After *eBay* and *Winter*

[7] Flexible contends that the presumption of irreparable harm in a copyright infringement preliminary injunction case survives the Supreme Court's opinions in *eBay* and *Winter*. Flexible's primary argument for the continued viability of the presumption is that this Circuit reaffirmed the presumption of irreparable harm in *Marlyn*, in which we reviewed a preliminary injunction issued in an analogous trademark infringement case. There we quoted the proper four-factor test in *Winter* and affirmed after stating "[t]he district court properly considered each of these factors." *Marlyn*, 571 F.3d at 877. The district court there, like the district court here, rested on a presumption of irreparable harm rather than finding that such harm was likely. *Id.* Flexible contends that our affirmation of the district court in *Marlyn* is an affirmation of the continuing vitality of the presumption of irreparable harm in intellectual property infringement cases.

**[8]** We do not agree. *Marlyn* contains no analysis concerning the use of the presumption of irreparable harm post-*Winter*. In fact, there is no indication that the parties briefed the issue of whether our long-standing presumption of harm survived after *eBay* or *Winter*. The entire discussion of irreparable harm in *Marlyn* reads:

> In evaluating irreparable harm, the court cited Ninth Circuit law holding that "[i]n a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.' " *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)). Because the court found a likelihood of success on the merits, it reasonably presumed irreparable injury.

*Id.* The panel's summary treatment of the presumption without consideration of the effect of *eBay* and *Winter* does not bind this panel or constitute an affirmation of the presumption's continued vitality. "[S]tatements made in passing, without analysis, are not binding precedent." *Thacker v. FCC (In re Magnacom Wireless, LLC)*, 503 F.3d 984, 993-94 (9th Cir. 2007).

**[9]** Flexible also cites *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) as supporting the continued use of the presumption of irreparable harm in an environmental case once a likelihood of success on the merits is demonstrated. *Alliance for the Wild Rockies* does not so hold. To the contrary, we stated that although the Supreme Court has noted " '[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable[,]' . . . this does not mean that 'any potential environmental injury' warrants an injunction." *Id.* at 1135 (quoting *The Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008)

(en banc)). Nonetheless, we found that "actual and irreparable injury, such as [Alliance] articulates here, satisfies the 'likelihood of irreparable injury' requirement articulated in *Winter*." *Id.* Thus, we appreciated the key distinction that although some injuries may usually be irreparable and thus a likelihood of irreparable injury easily shown, the plaintiff must still make that showing on the facts of his case and cannot rely on a presumption to do it for him.

**[10]** Another panel of this circuit very recently addressed an argument nearly identical to the one Flexible is now making. *See Perfect 10, Inc. v. Google, Inc.*, ___ F.3d ___, 2011 WL 3320297 (9th Cir. Aug. 3, 2011). Perfect 10 argued that the district court erred in finding it had not demonstrated irreparable harm because, having shown a likelihood of success on the merits of its copyright infringement case, it was entitled to a presumption of irreparable harm. *Id.* at *2. The panel in *Perfect 10* rejected the argument, concluding, as we do, that such a presumption does not survive *eBay* and *Winter*. *Id.* at *4. The minor differences between this case and *Perfect 10* — here the district court relied on the presumption of harm while in *Perfect 10* the court found that Perfect 10 failed to establish irreparable harm and the panel subsequently refused to rely on the presumption — are not enough to compel different results.

### C. Presuming Irreparable Harm Is Now Impermissible

We conclude that presuming irreparable harm in a copyright infringement case is inconsistent with, and disapproved by, the Supreme Court's opinions in *eBay* and *Winter*. *Id.* at *4. Thus, our long-standing precedent finding a plaintiff entitled to a presumption of irreparable harm on a showing of likelihood of success on the merits in a copyright infringement case, as stated in *Elvis Presley* and relied on by the district court, has been effectively overruled. In other words,

"*Elvis* has left the building."[5] Accordingly, we hold that even in a copyright infringement case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent.

## D.    Other Circuits and Authorities Agree

[11] Our sister circuits agree with our holding. The Second Circuit faced exactly the same question just a year ago, and came to the same answer we do today. *See Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010). The Second Circuit, like the Ninth, had a long-standing history of presuming irreparable harm upon the showing of a likelihood of success on the merits in a copyright infringement case. In *Salinger*, the district court issued an injunction based on Second Circuit precedent establishing a presumption of irreparable harm after finding the requisite likelihood of success on the merits. *Id.* at 74.

The Second Circuit reversed, holding that after *eBay* and *Winter* such a presumption was no longer permitted. *Id.* at 77. *Salinger* undertook a detailed examination of both *eBay* and *Winter*, and their applicability to preliminary injunctions in copyright infringement actions, and concluded "nothing in the text or the logic of *eBay* suggests that its rule is limited to patent cases. On the contrary, *eBay* strongly indicates that the

---

[5]*See* Cecil Adams, *The Straight Dope* (Dec. 27, 2002), http://www.straightdope.com/columns/read/2430/elvis-has-left-the-building-who-said-it-first, which explains that the quote has become "a catchphrase whose meaning, usually tinged with irony, is clear to all: the show's over, the curtain has fallen, the sun has set, that's all she wrote, the fat lady has sung, our work here is done, move along, nothing more to see, disperse, beat it, turn the page, hit the road, don't forget to tip your waitress, pack it up, turn out the lights, *das ist alles*, time's up, toodle-oo, *exeunt omnes*, class dismissed, back to work, don't let the screen door hit you where the good Lord split you, end of story, that's all there is there ain't no more, so long, hasta la vista, you don't have to go home but you can't stay here, later gator, 30, buh-bye, get lost, *ite missa est*, the end, finito, Scotty, beam me up." The same can be aptly said of the fate of the presumption of irreparable harm described in *Elvis Presley*.

traditional principles of equity it employed are the presumptive standard for injunctions in any context." *Id.* at 77-78. The Second Circuit recognized, as we have, that the Supreme Court "expressly relied upon copyright cases in reaching its conclusion" in *eBay*. *Id.* at 78.

The Second Circuit also had no trouble applying these principles to preliminary injunctions, reasoning:

> Nor does *eBay*, as reinforced by the Supreme Court's very recent decision in *Winter v. Natural Resources Defense Council*, ___ U.S. ___, 129 S. Ct. 365 (2008), permit an easier grant of a preliminary than of a permanent injunction. First, as mentioned above, one of the two cases *eBay* relied upon in stating the traditional equitable test involved a preliminary injunction. *See Amoco Prod.*, 480 U.S. at 542; *see also id.* at 546 n.12 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

*Id.* at 78-79. Thus, the Second Circuit agrees with us that a presumption of irreparable harm is no longer permitted in issuing an injunction; a plaintiff must show a likelihood of harm.

**[12]** The Fourth Circuit has also held that a plaintiff is no longer "entitled" to an injunction on the showing of infringement, and applied *eBay* in requiring all four factors of the four-factor test be shown. *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007). Similarly, the First Circuit has also applied *eBay* to a copyright infringement injunction.[6] *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008).

---

[6]More recently, the First Circuit applied *eBay* to a trademark infringement case, although it declined to decide whether a presumption of irrepa-

**[13]** The leading treatises are in accord with our reading of the effect *eBay* and *Winter* have had on the plaintiff's burden in copyright infringement injunction cases. Before *eBay*, *Nimmer on Copyright* was routinely cited as supporting the presumption. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d at 1254 (citing 3 *Nimmer on Copyright* § 14.06[A], at 14-50, 14-51 & n.16 (collecting authorities)). *Nimmer* has now seen the light, and recognizes that even in the context of preliminary injunctions in a copyright infringement claim, "[t]he Supreme Court's decision in *eBay* caused a new day to dawn . . . . No longer applicable is the presumption of irreparable harm, which allowed the collapse of factors that plaintiff must prove down to one. As one commentator notes, 'Harm must be proved, not presumed.' " 4 *Nimmer on Copyright* § 14.06[A][5], at 14-149 (footnotes omitted). The Rutter Guide also recognizes the change: "In the past, at least, injuries to certain types of property were presumed to be irreparable on the theory that monetary damages could not compensate for harm done . . . . The continued validity of these cases seems doubtful in light of *eBay* . . . ." Schwarzer, Tashima & Wagstaff, *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial*, ¶¶ 13:58.25-26 (The Rutter Group 2011) (citations omitted). In our view, there really is no doubt; at the very least the cases applying a presumption of harm after finding copyright infringement are no longer valid in light of *eBay*.

---

rable harm was valid after *eBay*. Instead, it held that the plaintiff was not entitled to relief because of the excessive delay in seeking an injunction and thus avoided the question. *Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc.*, ___ F.3d ___, 2011 WL 2090132, *5-7 (1st Cir. May 27, 2011). We have not found, nor has Flexible cited, any case in which a circuit court has upheld the presumption of irreparable harm after analyzing the issue following *eBay*. For that matter, we have not found, nor has Flexible cited, any case in which the Supreme Court has approved of such a presumption, either before *eBay* or after.

### E.    The District Court's Presumption of Harm Was Error

The district court, albeit reasonably in light of our precedent, relied solely on the presumption of irreparable harm to issue its injunction. Applying our reading of *eBay* and *Winter* to this case, reliance on a presumption of irreparable harm was error. *Perfect 10*, 2011 WL 3320297, *4 (refusing to rely on presumption of irreparable harm because such a presumption "is clearly irreconcilable with the reasoning of the Court's decision in eBay") (internal quotation marks and citation omitted). Flexible must demonstrate a likelihood of irreparable harm in order to obtain injunctive relief.

**[14]** Flexible asks us to affirm the district court notwithstanding the error because, in its view, the record clearly demonstrates that it is likely to suffer irreparable harm absent the requested injunction. However, the district court made no factual findings that would support a likelihood of irreparable harm. In fact, its only finding that touches the issue weighs against such a determination. The court found that "[Flexible] elicited no proof suggesting that it entered competing bids with contracts that [Precision] procured through the use of [Flexible's] platform drawings."

**[15]** While we do not suggest that this finding establishes a lack of irreparable harm, we believe it counsels against our undertaking a searching review of an incomplete record to make the required factual findings in the first instance. Flexible did not argue in its briefs below that it was likely to suffer irreparable harm; it relied solely on its entitlement to a presumption of irreparable harm. Nor do its briefs on appeal set forth sufficient facts demonstrating irreparable harm to compel us to find in its favor.[7] We believe the better course is to

---

[7]The evidence Flexible cites consists primarily of the unsubstantiated testimony of its President. Precision points to testimony of its own which seems to dispute Flexible's evidence. We believe the district court, which heard all the testimony and was presented with all the evidence, is in a better position to make this determination initially.

remand to allow the district court to make the requisite factual determinations regarding irreparable harm and apply those factual findings to the four-factor framework to determine whether injunctive relief is warranted. *See eBay*, 547 U.S. at 394 (vacating "the judgment of the Court of Appeals, so that the District Court may apply that framework in the first instance"). Accordingly, we vacate the injunction and remand to the district court for further proceedings consistent with this opinion.

## III.   OTHER ISSUES

Precision also contends that the district court abused its discretion in concluding, as a matter of law, that Flexible was likely to succeed on the merits and in issuing an overly-broad injunction. Because we vacate the injunction based on the district court's abuse of discretion in presuming irreparable harm, we need not reach these contentions.

## CONCLUSION

The preliminary injunction issued against Precision is **VACATED**, and the matter **REMANDED** to the district court for further proceedings consistent with this opinion. However, the preliminary injunction will stay in place for ten days following the issuance of the mandate so that Flexible will have an opportunity to apply for a temporary restraining order pending the rehearing of the motion for a preliminary injunction.